May it please the Court, I'm Beth McKenna. I represent Willie Thompson, the petitioner in this case. I'd like to reserve two minutes for rebuttal, please. When the prosecutor began his closing arguments here, he knew he had a weak case. The jury had heard about a late-night shootout where at least one of the decedents was armed with a gun. The chief witness here was reticent and inconsistent, and to the extent that there was another witness, her testimony conflicted with his on critical points. It simply wasn't clear what happened that night. The prosecutor knew he had little clear evidence of intent or premeditation or motive, so he pursued a pattern of misconduct to push the jury to convict for non-evidentiary reasons. Just a minute. Before you give me this good jury argument you're trying to make, what's my standard of review on this case? Yes, Your Honor. Well, you're going to look at whether the court of appeals determination was objectively unreasonable. So I'm really looking to see whether they applied principles unreasonably, right? That's correct, Your Honor. Because they look at these cases the same way I do. They apply the same Supreme Court precedent I do, and so it's only a matter if they're totally unreasonable in their approach that I can overturn them, even if I don't agree with them, right? That's correct, Your Honor. And in this particular situation, let's just say on your call for justice, at that point don't I look at U.S. v. Williams, which suggests that the prosecutor's appeal to the jury to act as the conscience of the community is acceptable, unless it's specifically designed to inflame the jury? Isn't that my standard? Well, Your Honor, I think you do have to look at whether it was designed to inflame the jury. Well, isn't that what Williams tells me I have to apply? Well, yes, but if you apply that standard you'll see that, in fact, that was the case here. Well, and then don't I also have to apply the standard of the United States Supreme Court, which says arguments of counsel generally carry less weight with a jury than do instructions from the court? Well, even though that's the case. Don't I have to do that too? It is, in fact, the case. And didn't the court in this case instruct the jury not to be influenced by sentiment, sympathy, passion? They must follow the law. Any statements by counsel conflicting with the instructions must be disregarded. All questions of fact must be decided based on the evidence. Yes, Your Honor. Isn't that what the jury was instructed? Yes. And then at that point you want me to say, given the standard of review, I should overturn the state court. Well, Your Honor, yes, that's the case, but there have been cases from this court where even though these admonishments have been given, it hasn't been completely dispositive because it's just a factor in the analysis. If the evidence overall is weak and the error went to change, let me rephrase that, if it's particularly damaging, as it was in this case, then the admonishment doesn't, it's not dispositive. Well, let me ask you a further question. Isn't it so that given even the argument you're making and given that the prosecutor said, as you suggest he said, both counsel had the chance to respond to that statement, right? They did, Your Honor. So defense counsel responded. Then the prosecutor responded. And in fact, the prosecutor said himself, this case is not about cleaning up Oakland. It's about cleaning up a neighborhood. It's not about cleaning up a neighborhood. It's not about sending a message. It's trying to figure out the best of our ability, whether we can determine beyond a Isn't that the evidence? Isn't that what they're supposed to do? Right. But as I stated, they have the opportunity, but if it still has the potential to push the jury to decide for reasons that aren't evidentiary because it's getting them to focus on things like cleaning up the neighborhood, and there are cases from this court where it's strict, even in the habeas context where it's said that the prosecutor's job is not to, you know, speak in the voice of the victim or exact revenge, tell the jury that their job is to clean up the community or to exact revenge or to prevent future crime, that they're supposed to focus on the evidence strictly before them. What part of counsel's arguments ever suggests that he wavered from his focus on the Because I didn't think he ever looked to appeal to the passions of the jury. I think when he said to the jury that they should send a message. So that's the best you got? I think that's the most egregious of his conduct. But I think if you look at it in the context, again, of the other errors in the trial and in his argument, I think it ties together a theme that he's basically asking the So in this, again, a case where the evidence is weak, to look at the community as a besieged community that needs help from the jury, and if you also consider the comments comparing the defendants to animals and felons, I think that it just crossed the line, Your Honor. And even given the standard review, I can get there? Yes, sir. Let's move then to your second idea, something about a felon. Do you want to move there? Yes. First of all, I would say that that had relevance to this case because it happened at a critical moment in the narrative. The defendants got out of the car, and there was evidence and conflict about whether or not they saw this chief witness, Mr. Cobbs, give the gun to one of the decedents. And this question of whether the clients had some kind of agreement to run and go get their guns, at that point when he talks about the felon status of them, he's explaining that that's why they went to get their guns. Let me ask you a question, another one. Did they object? Were you counsel below? No, Your Honor, I was not. Did counsel below even object to the prosecutor's statement? He did not object at the point in the trial, but he did make objections to the admission of this evidence in motions in limine. And the court instructed the jury to consider the evidence only for a limited purpose, and all other influences should be disregarded? He did at the end of the he did not sui sponte notice that the court that the prosecutor had violated the motion in limine, but he at the end of the when he did the final instructions to the jury, he did make that instruction. I thought the reason why he used felons was to make more logical why they would stash guns, which would seem, you know, on the face of it, you don't stash guns all over the community, but he was trying to make that more logical, that they were felons. That's correct. But he was drawing attention to their felon status and defiance of the order of the court. So what was the objection that was made? There was no objection made at the time, but they did object to the using the evidence as they were there was an order of the court, a pretrial order, that that evidence was only supposed to go to the felon in possession of a gun charge and that the prosecutor was not supposed to bring up the felon status in the context of the murder charges. I see that my time has expired, so. Well, your time, if you want that, is 2 minutes. Right.  Thank you. All right. We'll turn to the other side. Unless somebody else. Did you have a further question, Judge? No. Thank you. Okay. Did you? No, I did not. All right. Good morning, Your Honor. David Rose for Attorney General's Office. May it please the Court. We discussed these legal issues at length in our brief. I believe we addressed each point that the Court has brought up. Counsel did chide us in her brief for not sufficiently arguing the harmless error argument. Why don't you turn, if you wouldn't mind, to the due justice issue. As a district court judge, I've heard a lot of prosecutors' arguments, and they get closer and closer to the line. And I understand they're trying to get a conviction, but the idea that justice is only putting a person in jail is a little problematic. Tell me, do you think that was, that due justice was error? And if it was error, was it harmless? I think you have to look at the context of the case and what the prosecutor was trying to express to the jury. The prosecutor in this case, I would submit, had two main concerns with the jury. Number one, it was a case of extreme violence. Two, premeditated, completely unprovoked murders. I think you have a jury of normal citizens in the case, and the prosecutor, as an experienced prosecutor, is going to fear two things. Number one, he's going to fear that in this context, where all four of the principals, the two defendants and the two victims, lived in a terrible neighborhood in Oakland, everyone knew it was an awful neighborhood in Oakland, one of the victim's fathers testified that he heard gunshots four or five nights a week, people shooting at each other right outside of his window. So I think it's just that. Does it make a difference that this happened in Oakland instead of Pleasant Hills? The point is that a jury may look at all four of these people, the defendants and the victims, as people that are beyond the pale, and not be sufficiently engaged in the extremely difficult task of finding guilt beyond a reasonable doubt, that they might just wash their hands of the whole thing and say the victims lived in that neighborhood, we don't care about them, it's too much work. That's the first concern the prosecutor had. The second, which piggybacks on that, is that the jury is facing these two cold-blooded killers. Even if they found guilt beyond a reasonable doubt totally properly, they had to look at these two fellows in the eye and bring back a verdict of guilty when they knew that these came, these two people came from a neighborhood of extreme violence and the jury could very well, the experienced prosecutor could very well think that the jury might hesitate to look these fellows in the eye and sentence them to jail for the rest of their lives. Do you mean they would fear retribution? Absolutely. And there was talk in this case of other people in the neighborhood who were allied with these defendants. I think it's not unreasonable for a prosecutor in that context, in that courtroom to say this jury has to have their backbone stiffened a bit by saying this is your responsibility as citizens to do justice in this case, to take it seriously, to deliberate seriously, to go all the way to find if the facts can take this case to guilty beyond How many of the jurors lived in Oakland? I can't answer that. My worry is that if I swallow your argument, is he trying to inflame the jury? Is this specifically designed then to inflame the jury? I think it's specifically the opposite. It's to tell the jury to engage, to do their job, to deliberate, not to say these victims don't matter. It's the opposite, that the prosecutor is worried that the jurors would not be engaged, that they wouldn't take the case seriously because they wouldn't care about the victims. He's saying, no, you have to take it seriously. You are the representative of the community. You have to do justice in this case. You can't just say I don't care enough about this to get involved. I think that's clearly what a prosecutor in this courtroom was worried about. I don't see the inflammatory. The one thing that the prosecutor said that I would say got close to the line was send a message to the community. But that was immediately objected to. The jury was admonished, base your verdict on the evidence. And the prosecutor repeatedly thereafter said, don't worry about sending the message to the community. Look at the evidence. Evaluate the evidence. Bring back a just verdict based on the evidence. If you find it's proof beyond a reasonable doubt, have the courage to come in here and say so and bring back that evidence and look the defendants in the eye and say you are guilty. I think that's what the motivation of the prosecutor was, but the entire do justice strain of argument. Sotomayor, may I ask you, during the selection of the jury, was there anything about the panel that gave the prosecutor pause to think that they might not do justice? I don't. Since that issue was not raised in this appeal, I don't have a clear memory of the jury, but I know from experience based on these cases with cases in this sort of neighborhood that the jury is always on edge about what do these defendants know about us? What do these defendants have friends who could try to influence us? This is all in this courthouse, in this sort of environment, in a terrible neighborhood where people were doing this sort of thing. The jurors are always concerned about that sort of thing. But don't you think the jury could also take what the prosecutor said as something to say you don't have the courage to do what you want to do. I want you to get the courage. I mean, why is it that the that wouldn't inflame the jury the other way, that they are being insulted by the prosecutor because the prosecutor thinks that they would be afraid and not do the right thing? The prosecutor always went back to it's my burden to show beyond a reasonable doubt that these fellows are guilty. He never strayed from that. He always said that your duty is as the court has instructed you. Evaluate the case. Deliberate. Determine whether this case is proved beyond a reasonable doubt. And the vast bulk of the prosecutor's argument was based on the evidence. He knew what his job was. His job was to prove the case beyond a reasonable doubt based on the evidence. He repeatedly told the jury, I can't tell you how many times, but repeatedly, look at the evidence. Evaluate the evidence. If you find the evidence proves guilt beyond a reasonable doubt, then it's your obligation as members of the community to do justice, which is bring back that verdict. He never went over and said anything like these fellows are too dangerous to be risked to let them on the street. He never implied anything like that. He always came back and the judge repeatedly instructed the jury. Base it on the evidence. Base it on the evidence. And after the objection, when he made that one slightly questionable statement about sending a message, he came back and said, no, don't worry about sending  Base it on the evidence. The judge said base it on the evidence. And I don't see in this record that there was any risk that the jury didn't understand that. Any other courts? No. Anything else? I hesitate to go beyond the Court's interest, but I would like to emphasize that the proof in this case was not weak. The proof in this case was extremely strong. And I witnessed who knew the defendants, who had known them all their lives, a woman who said something very interesting. She said, I wasn't always a Muslim, meaning I wasn't always a righteous, God-fearing person, said, I know what was going on down there. She was in her apartment watching this happen. She called 911 and said, I hear the way they're talking to each other. I know that Thompson, the fellow I've known all my life, is about to kill these fellows. She called that 911 before it happened, as it was happening, and said that. She hung up. The shooting happened. 911 called her back and said, what's going on? She said, it's too late. They already killed him. There was other evidence, too. There was a dying declaration of Haj who said, Mooney Coleman killed me. And there was Cobbs' long testimony, which was sketchy because he's a sketchy character. But it was more or less corroborated by almost everything else, the fact that Haj gave a dying declaration, which totally corroborated his statement, and Khadijah Shaheed, the Muslim woman's statement of actually seeing it on the street, exactly as Cobb described it. So I would disagree that the evidence was weak in this case. As Judge Wilkenbelow found and as the California Court of Appeal found, the evidence in this case was overwhelming. Thank you. Thank you. Ms. Court. You have a minute and a half. First of all, I would say that Ms. Shaheed, her evidence actually, her testimony contradicted the Cobbs witness in many key ways, as I've outlined in my reply brief. But I would also add that I think the comments put forth by my, by the Attorney General's office actually support my argument. I mean, he's talking about a bad neighborhood, fear of retribution, jury's on edge. This is precisely the conditions in which it's dangerous for a prosecutor to invoke, you know, societal ramifications of the verdict, as opposed to urging them to follow the evidence. And, in fact, two decisions of our court, of this Court, including Berrigan and Weatherspoon, have, I mean, those are not habeas cases, but they've been cited in habeas cases that, in Weatherspoon, for example, it stated that it was improper for the prosecutor to comment on the social or societal ramifications of a verdict. All right. Thank you. Okay. Thank you very much. Case 1615203 is submitted.
judges: Wallace, N.R. Smith, Batts